```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SANTIAGO TORRALBA AND ALEJANDRO        :
ZACATENCO,
                                       :
              Plaintiffs,                   OPINION & ORDER
                                       :
       -against-                            14 Civ. 595 (GWG)
                                       :
LITTLE INDIA STORES et al.,
                                       :
              Defendants.              :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Santiago Torralba and Alejandro Zacatenco bring this suit against defendants Little India Stores Inc., Little India Grocery Inc. (collectively "Little India"), Sushma Gupta ("Sushma"), Shipra Doe[1] ("Shipra"), and Rajan Doe[2] ("Singh"). Plaintiffs allege violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The parties have consented to having this case adjudicated before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Currently before the court are the parties' cross-motions for summary judgment.[3] For the reasons stated below, both motions are denied.

---

[1] Shipra Doe was later identified as Shipra Gupta.

[2] Rajan Doe was later identified as Salinder Singh.

[3] See Notice of Motion, filed November 24, 2015 (Docket # 83); Declaration of Joshua Butnick in Support of Plaintiffs' Motion for Summary Judgment, filed November 24, 2015 (Docket # 84) ("Butnick Decl."); Affidavit of Plaintiff Santiago Torralba, filed November 24, 2015 (Docket # 85) ("Torralba Aff."); Affidavit of Plaintiff Alejandro Zacatenco, filed November 24, 2015 (Docket # 86) ("Zacatenco Aff."); Plaintiff's Memorandum of Law in Support of Their Motion for Summary Judgment, filed November 24, 2015 (Docket # 87) ("Pl. Mem."); Plaintiffs [sic] Local Rule 56.1 Statement of Undisputed Material Facts, filed November 24, 2015 (Docket # 88) ("Pl. 56.1"); Notice of Motion, filed Dec. 30, 2015 (Docket # 106); Declaration of Satish K. Bhatia in Support of Motion for Summary Judgment on Behalf of Little India Grocery Inc., Shipra Gupta, and Sushma Gupta, filed December 30, 2015 (Docket # 107) ("Bhatia Decl."); Affidavit of Shipra Gupta, dated October 30, 2015 (Docket # 108);

I.      BACKGROUND

Little India is an Indian grocery store located in Manhattan.  See Deposition of Shipra Gupta, dated October 9, 2014 (annexed as Ex. C to Bhatia Decl.) ("Shipra Dep."), at 5, 8; Torralba Aff. ¶ 3.  It primarily sells "Indian snacks, nuts, Indian food . . . lentils, rice, [and] spices."  Shipra Dep. at 6.  Although Little India purchases its inventory from vendors within New York State, the products come from outside the state of New York, often from international sources.  Shipra Dep. at 6-7.  Little India is open every day of the year.  Id. at 9; Torralba Aff. ¶ 9.  Its hours of operation are generally 10:00 a.m. to 9:30 p.m., though it sometimes closes early on holidays.  Shipra Dep. at 9; Torralba Aff. ¶ 9.  Little India does not sell items over the phone or online but has, on rare occasions, shipped products to customers outside New York State.  See Shipra Dep. at 7.

Although the existence of an employment relationship between the parties remains in dispute, defendants agree that plaintiffs were "off the books completely," that any payments made to plaintiffs were in cash, and that the payments were unaccompanied by any documentation.  See Shipra Dep. at 16-17.  There are no records of plaintiffs' hours.  Shipra

---

Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed Dec. 30, 2015 (Docket # 109) ("Def. Mem."); Declaration of Satish K. Bhatia in Opposition to Motion for Summary Judgment Filed by Plaintiffs, filed December 24, 2015 (Docket # 104); Defendants' Local Rule 56.1 Counterstatement of Facts in Opposition to Plaintiffs' Motion for Summary Judgment, filed December 24, 2015 (Docket # 105) ("Def. Opp. 56.1"); Declaration of Joshua Butnick in Opposition to Defendants' Motion for Summary Judgment, filed January 4, 2016 (Docket # 112); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed January 4, 2016 (Docket # 113) ("Pl. Opp."); Plaintiffs Local Rule 56.1 Counter-Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, filed December 21, 2015 (Docket # 101) ("Pl. Opp. 56.1"); Plaintiffs' Reply Brief in Support of Motion for Summary Judgment, filed January 7, 2016 (Docket # 114) ("Pl. Reply."); Defendants' Memorandum of Law/Reply in Opposition to the Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motion for Summary Judgment, filed January 7, 2016 (Docket # 115) ("Def. Reply").

Dep. at 17-18; Torralba Aff. ¶ 17; Zacatenco Aff. ¶ 18.

Beyond these basic facts, little else is undisputed between the parties. Torralba contends that he worked at Little India from November 22, 2008, though July 4, 2013, except for a one-month vacation. Torralba Aff. ¶¶ 10, 15. He states that the defendants determined his shifts and that throughout his employment "[he] worked seven days per week, 10am-8pm, sometimes longer." Id. ¶ 8. Torralba described his duties at Little India as "general store help," which included stocking, unloading inventory, cleaning, and anything else defendants required. Id. ¶ 7. He was paid an hourly rate of $7.25 per hour from November 2008 to November 2009; $7.75 per hour from November 2009 to May 2011; $8.00 per hour from May 2011 to February 2012; and $9.00 per hour from February 2012 until July 2013. Id. ¶ 18. He states that he was never paid at an overtime rate throughout his employment at Little India and that he was not paid at all for his final partial week of employment, from June 30, 2013 to July 4, 2013. Id. ¶¶ 20, 22. Defendants recount a dramatically different story. Defendants contend that, rather than starting employment in 2008, Torralba began work only in November 2012, and that he worked, on average, "only once or twice a week . . . [for] four hours" a day. Shipra Dep. at 12-15. Furthermore, defendants submit that Torralba was paid a flat rate of $15 per hour throughout his employment and that his job duties were primarily to clean the store and occasionally help stock deliveries. Id. at 11-12, 14, 17. Shipra further testified that she has never "had [any] employee[] that worked more than forty hours," per week. Id. at 21.

With regard to Zacatenco, the parties' respective recollections of the facts are even more divergent. Plaintiffs contend that Zacatenco was employed at Little India from January 2012 until July 4, 2013, and that he regularly worked Monday through Saturday from 12:00 p.m. to 10:00 p.m. Zacatenco Aff. ¶¶ 9-11. Zacatenco states that throughout his employment he

3

received a wage of $9 per hour, which was paid in cash on a weekly basis. Zacatenco Aff. ¶¶ 19-21.

Defendants contend that Zacatenco was hired only to help clean the store after a fire and that he worked exactly two days. Shipra Dep. at 15-16. Defendants state that after this work was completed, Zacatenco would often "come and . . . visit" Torralba at the store. Shipra Dep. at 15. Defendants believe Zacatenco is Torralba's son. Id.

In sum, defendants have taken the position that "Little India does not owe any money to either of the Plaintiffs, as both Plaintiffs were paid for the work performed by them." Affidavit of Shipra Gupta, dated April 2, 2015 (annexed as Ex. H to Bhatia Decl.) ("Shipra April 2, 2015 Aff."), ¶ 13.

II.     LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56(a) provides that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (citation omitted); see also Fed. R. Civ. P. 56(c)(4) (parties shall "set out facts that would be admissible in evidence.")

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed," and the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine

issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256, and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted). Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (alteration in original) (quoting Celotex, 477 U.S. at 322). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

Where, as here, a court is faced with cross-motions for summary judgment, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." Heublein, Inc. v. U.S., 996 F.2d 1455, 1461 (2d Cir. 1993). In such cases the reviewing court need not "grant judgment as a matter of law for one side or the other . . . [but rather] must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. (citing Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981).

III.     DISCUSSION

Plaintiffs initially moved for summary judgment on the following issues: that they are "covered" by the FLSA and NYLL, that they are owed overtime pay, that they are owed liquidated damages, and that they are owed attorney's fees, costs, and prejudgment interest. Pl.

Mem. at 3, 4, 7, 11. The defendants' memorandum of law in support of their cross-motion for summary judgment is not organized into distinct points for which they oppose or seek summary judgment. Nonetheless, it appears they argue that they are not covered by the FLSA, that no employer/employee relationship existed, and that the plaintiffs have failed to meet their burden with respect to liability. Def. Mem. at 6, 9. In their response to defendants' motion, plaintiffs conceded that the defendants had created an issue of fact regarding both the employer/employee relationship and overall liability. See Pl. Opp. at 11-13. There does not appear to be an issue to be decided regarding "coverage" under the NYLL that is distinct from the issue of defendants' liability. Accordingly, we do not address it separately. Additionally, in light of the fundamental dispute over plaintiffs' wages and hours, which we have already described, plaintiffs cannot be granted summary judgment on the issue of liquidated damages. It is also premature to rule on the entitlement to attorney's fees, costs, and prejudgment interest. Accordingly, it appears the following issues remain to be decided: plaintiffs' and defendants' cross-motions for summary judgment on the issue of coverage under the FLSA, and the defendants' motion on the employer/employee relationship and liability for overtime.

    A.    <u>Coverage under the FLSA</u>

Defendants argue that because Little India is not an enterprise "engaged in interstate commerce," plaintiffs' purported employment is not covered under the FLSA. Def. Mem. at 6-8. As an initial matter, we reject defendants' argument that this issue raises the question of whether this Court has "jurisdiction" over the FLSA claim. Id. at 6. Case law makes clear that "the question [of] whether 'enterprise coverage' applies is an element of the FLSA cause of action, and is not jurisdictional." Shu Lan Chen v. Gypsophilia Nail & Spa Inc., 2015 WL 3473510, at *1 (S.D.N.Y. June 2, 2015) (citations omitted); accord Jia Hu Qian v. Siew Foong Hui, 2012 WL

1948820, at *2-3 (S.D.N.Y. May 30, 2012); Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 343-44 (E.D.N.Y. 2014). Rather, whether defendants qualify as an "enterprise engaged in commerce" is an issue that "goes to the merits of Plaintiff['s] claims rather than the [c]ourt's subject matter jurisdiction." Qian, 2012 WL 1948820, at *2 (quoting Velez v. Vassallo, 203 F. Supp. 2d 312, 323 (S.D.N.Y. 2002).

The FLSA provides coverage to those "employees who . . . [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Covered employees are guaranteed a minimum wage as set forth in the statute and, when an employee works beyond 40 hours in one week, the FLSA requires that he or she be compensated at a rate "not less than one and one-half times the regular rate" of pay. 29 U.S.C. § 207(a)(1). Accordingly, "an employer is subject to both the minimum wage and overtime provisions of the FLSA if either (1) its employees are engaged in commerce or (2) the employer is an enterprise engaged in commerce." Chen, 2015 WL 3473510, at *1 (internal brackets, quotations, and citation omitted). These two types of coverage are commonly referred to as "individual coverage" and "enterprise coverage." Id. (citation omitted).

"Individual coverage" applies to an employee who has "'engaged in commerce' or 'engaged in the production of goods for commerce.'" Boekemeier v. Fourth Universalist Soc. in City of New York, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) (quoting 29 U.S.C. § 207(a)(1)). This type of coverage — which we do not address here — is implicated when "a substantial part of the employee's work . . . [is] related to interstate commerce." Id. (quoting Divins v. Hazeltine Electronics Corp., 163 F.2d 100, 103 (2d Cir. 1947)). Enterprise coverage, on the other hand, applies when an employer:

>   (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
>   (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . .

29 U.S.C. § 203(s)(1)(A)(I).

Under Department of Labor regulations, whether an employer meets the above criteria is "determined on an annual basis" and is satisfied if the employer meets the gross sales requirement and "regularly and recurrently has at least two or more employees engaged in . . . activities" provided for under the Act.  29 C.F.R. § 779.238.  The regulation states that "an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition."  Id.  Surpassing this threshold, however, "is relatively easy to establish."  Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 346 (E.D.N.Y. 2014).  Notably, unlike individual coverage, enterprise coverage does not require "the employee . . . to be involved in an activity that affects interstate commerce."  Boekemeier, 86 F. Supp. 2d at 285 (citations omitted).  Thus, "even a local laundry is covered if the soap it uses moved in interstate commerce."  Velez, 203 F. Supp. 2d at 328 (internal quotations and citations omitted); Archie v. Grand Cent. Partnership, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (sanitation crew equipment, including bags, brooms, shovels, and scrapers, "undoubtedly moved in interstate commerce to New York City").

Plaintiffs argue that Little India is covered under the FLSA's enterprise coverage provision.  It is undisputed that defendants grossed more than $500,000 annually throughout the relevant period.  Affidavit of Shipra Gupta, dated January 26, 2015 (annexed as Ex. 4 to Butnick Decl.), ¶ 3.  Thus, whether the FLSA is applicable rests on the first prong of the enterprise

coverage analysis.

                1.      Employment Duties & Interstate Commerce

Defendants argue that plaintiffs have failed to provide sufficient evidence that Little India engages in interstate commerce. Defendants contend that because the "store very rarely ship[s] product outside of [the] United States and [didn't] sell any item[s] online or on [the] phone," the store's participation in the interstate market is insufficient to warrant coverage under the FLSA. Def. Mem. at 7. But, as just discussed, where the gross sales threshold is met, enterprise coverage under the FLSA exists merely when employees were engaged in "handling, selling, or otherwise working . . . [with] materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(I); see also Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 99 n.7 (2d Cir. 2009) (citations omitted). Here, it is undisputed that the nature of the plaintiffs' work at Little India included cleaning the store and occasionally stocking inventory. Torralba Aff. ¶ 7; Zacatenco Aff. ¶ 8; Shipra Dep. at 12, 14-15. Defendants also admit that much of that inventory consists of products generated from outside the United States, Shipra Dep. at 7, and Singh, a non-plaintiff employee of Little India, testified that he acted as the store's cashier and ordered supplies on a regular basis, Singh Dep. at 11-12. Accordingly, there is no dispute that these plaintiffs and Singh handled groceries or materials that "have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(I); accord 29 C.F.R. 779.238. Thus, the activities performed by these three employees of Little India fall within the type of activities defined by the Act.[4]

---

[4] Defendants cite to a number cases decided between 1942 and 1946 purportedly standing for the position that the FLSA does not apply to an employer who only engages in interstate commerce "infrequent[ly]." Def. Mem. at 7-8. All of the cited cases in support of this assertion, however, were resolved prior to the 1974 amendments to 29 U.S.C. § 203(s)(1)(A)(I) which

        2.    <u>Number of Employees</u>

To show Little India is a covered enterprise under the Act, plaintiffs must also show that Little India "regularly and recurrently has at least two or more employees" engaged in the covered activities — that is, the activities of handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. 29 C.F.R. § 779.238.

The only way the question of coverage would ever be at issue in this case is if a jury finds that one of the plaintiffs was actually working at the store. Accordingly, for our present analysis at least one of the plaintiffs will count as one of the two employees required under the regulation. Thus, we turn to the question of whether there is a worker other than the two plaintiffs who qualifies as an employee. That question is easily resolved in plaintiffs' favor. Accepting the admissible evidence offered by defendants, it is clear that Singh qualifies as an employee.

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The analysis looks primarily to "whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." <u>Godoy v. Rest. Opportunity Ctr. of New York, Inc.</u>, 615 F. Supp. 2d 186, 193 (S.D.N.Y. 2009) (quoting <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1059 (2d Cir. 1988)). In reaching a determination of whether an individual is an "employee" or a non-employee independent contractor, a court looks to the "economic realities" of the relationship.

---

added the words "handling" and "materials" to the scope of coverage. Thus, they have no relevance. <u>See</u> <u>Archie</u>, 997 F. Supp. at 529-31 (noting that since the 1974 amendment to the FLSA, courts have found "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce").

Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 911-12 (S.D.N.Y. 2013).  This analysis includes a review of the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Brock, 840 F.2d at 1058-59.  No single factor is dispositive; rather, "the test is based on a totality of the circumstances."  Hart, 967 F. Supp. 2d at 912 (quoting Brock, 840 F.2d at 1059).

The facts relevant to this test are as follows: Singh has worked with Little India for seven or eight years.  Singh Dep. at 11.  He was hired by Sushma, and currently works under Shipra's management.  Id. at 11-12, 15.  His duties at Little India involve acting as a cashier and ordering supplies for the store.  Id. at 12; Shipra Dep. at 6.  Singh testified that he usually works five days per week, and that, in the past, Shipra had arranged his schedule.  Singh Dep. at 12-13.  Shipra initially testified that Singh worked seven days a week and that he is paid an hourly wage of $12.50.  Shipra Dep. at 19, 20.  She also initially testified that he works "from noon [to] nine-thirty," id. at 19, though when questioned about whether he was paid overtime, Shipra stated that she "make[s] sure people don't work over forty hours in [her] store," and that Singh "[s]ometimes . . . comes in at two, sometimes . . . at three," id. at 20; accord id. (Singh "doesn't have a fixed schedule").  In her testimony Shipra agreed with the questioner's statement that "[e]ven though [Singh] is there seven days a week, he determines what hour he is going to come in."  Id. at 22.  Shipra describes Singh's role as the store's "manager," id. at 6, although she states that she, not Singh, was responsible for approving all business decisions at Little India.  See id. at 10-11; Shipra April 2, 2015 Aff. ¶ 11.

Defendants ultimately supplied documents that are purportedly time records for Singh for

11

the period of January 2013 to November 2014.  <u>See</u> Raja Time Sheet (annexed as Ex. F to Bhatia Decl.).  These records, however, are unauthenticated by anyone with personal knowledge as to their creation and no foundation has been supplied for their admissibility.  Nonetheless, even if we were to accept them as evidence, they show that Singh regularly worked approximately 20 to 30 hours each week.

      Examining the "economic realities" of the relationship, it is obvious that Singh is an employee.  Shipra and Sushma held significant control over Singh inasmuch as they hired him, paid him, and instructed him on how to approach any "decisions for the store."  Singh Dep. at 12-16; <u>see also</u> Shipra Dep. at 10, 20.  Singh's role as a cashier at the store involved tasks that did not require any special skill or talent, and more closely resembled the work of a "wage earner[] toiling for a living, than [an] independent entrepreneur[] seeking a return on [a] risky capital investment[]."  <u>Hart</u>, 967 F. Supp. 2d at 920 (citation omitted).  Although Singh's schedule was not always consistent, he worked at Little India at least five days per week for the better part of a decade.  Singh Dep. at 11-12.  Finally, his work was obviously an integral part of Little India's business as it appears he was often, if not regularly, the only person in charge of the operation of the store.  <u>See</u> Shipra Dep. at 18-19, 29, 34.  The claim that Singh did not work 40 hours per week does not affect this analysis.  As noted in the regulations, all that is required is that the employee's work be "regular[] and recurrent[]," 29 C.F.R. 779.238, which plainly occurred here given that he generally worked five days a week for 4 to 6 hours a day.

      Because Singh qualifies as a second employee for the purposes of enterprise coverage, and because the other requirements of the statute have been met, defendants' motion for summary judgment on this issue is denied.  Plaintiffs' motion is denied for now in light of the factual dispute regarding plaintiffs' status as employees.  However, should either plaintiff prove

at trial that he was an employee of the defendants, that plaintiff will be entitled to judgment as a matter of law on the issue of enterprise coverage.

B.  Employer/Employee Relationship

Defendants seek summary judgment that plaintiffs were independent contractors, and not employees. Def. Mem. at 2; Def. Opp. at 9.[5] As noted above, the facts surrounding plaintiffs' employment with Little India remain in dispute. Defendants nonetheless argue that the testimony of Singh and Shipra, as well as certain "quarterly federal tax returns," irrefutably establish that Torralba and Zacatenco were independent contractors and not employees. Def. Mem. at 9-11; Def. Opp. at 9. Defendants do not even attempt to address the conflicting evidence provided in plaintiffs' affidavits, which shows them to be hourly employees over many months or years. Accordingly, because the nature and extent of plaintiffs' employment is in dispute, summary judgment cannot be granted in favor of defendants on the issue of the employee/employer relationship under either the FLSA, or the NYLL.

C.  Hours Worked

Defendants argue that the plaintiffs have "failed to discharge their initial burden to establish . . . that they worked overtime." Def. Mem. at 9 (capitalization and emphasis omitted); accord Def. Opp. at 9. While defendants acknowledge that both plaintiffs have submitted affidavits that assert that they worked overtime hours, defendants inexplicably argue that such

---

[5] The test regarding the employee/employer relationship has already been discussed in Section III.A.2 above with respect to Singh. The same test governs the relationship under the NYLL. See, e.g., Inclan v. New York Hospitality Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (noting that although neither the Second Circuit nor the New York Court of Appeals has addressed the issue, "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.") (citations omitted).

evidence is insufficient to create a dispute of material fact. Def. Mem. at 4; see also id. at 10 ("Except for [the] bald statement of the plaintiffs that they worked for many years . . . and that they worked overtime, there is not even [an] iota of evidence that they ever worked overtime."); Def. Opp. at 9.

Although employees bear the initial burden of showing, "by evidence rather than conjecture," the amount of overtime worked, Keubel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686 (1946)), where an employer produces "inaccurate or inadequate" time records, the employee need only "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. (quoting Anderson, 328 U.S. at 687-88). This burden is "not high," and may be satisfied by mere "estimates based on [the employee's] own recollection." Id. Once such a showing has been made, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. (quoting Anderson, 328 U.S. at 687-88). In the present case, no records of the plaintiffs' employment with Little India have been produced and the plaintiffs have submitted sworn testimony regarding their recollection of the length of their employment and the hours they worked each day. See Torralba Aff.; Zacatenco Aff. Thus, plaintiffs have met their initial burden and a dispute of material fact exists precluding summary judgment. See, e.g., Arasimowicz v. All Panel Systems, LLC, 948 F. Supp. 2d 211, 224-26 (D. Conn. 2013) (denying summary judgment as to whether plaintiff worked uncompensated overtime, where the employer failed to produce employment records, and the parties submitted conflicting testimony). Accordingly, defendants' motion for summary judgment as to liability is denied.

IV.   CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment (Docket ## 83 and 92 (refiled as Docket # 106) are denied.

SO ORDERED.

Dated: February 29, 2016
      New York, New York

                                             GABRIEL W. GORENSTEIN
                                             United States Magistrate Judge